UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALTA VISTA PRODUCTIONS, LLC and  　　　　　CASE NO. 10-1948
ALTA VISTA PRODUCTIONS, INC.

V.　　　　　　　　　　　　　　　　　　　　JUDGE _____

ST. PAUL FIRE & MARINE INSURANCE COMPANY　　MAGISTRATE_____
AND THE TRAVELERS COMPANIES, INC.

## COMPLAINT

The Plaintiffs Alta Vista Productions, LLC and Alta Vista Productions, Inc. (hereafter referred to jointly as "Alta Vista") allege the following in support of their Complaint against St Paul Fire & Marine Insurance Company ("St. Paul") and The Travelers Companies, Inc ("Travelers") (St. Paul and Travelers hereafter referred to jointly as "Defendants").

## JURISDICTION

1.

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because: (1) diversity of citizenship exists between the Plaintiffs and each of the Defendants; and (2) the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## VENUE

2

Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the Eastern District of Louisiana because a substantial part of the events giving rise to the claim(s) asserted in this Complaint occurred within the Eastern District, namely, New Orleans, Louisiana.

## PARTIES

3

Plaintiff Alta Vista Productions, LLC is a Louisiana limited liability company domiciled at 2154 Midway Street, Shreveport, Louisiana 71108 The sole member of Alta Vista Productions, LLC is Alta Vista Financing, LLC, which is a Louisiana limited liability company domiciled at 2154 Midway Street, Shreveport, Louisiana 71108. The sole member of Alta Vista Financing, LLC is Studio Financing, Inc., which is a Louisiana corporation domiciled at 2154 Midway Street, Shreveport, Louisiana 71108 and with its principal place of business also located in Shreveport, Louisiana. Plaintiff Alta Vista Productions, Inc. is a Nevada corporation domiciled at 318 N Carson Street, #208, Carson City, Nevada and with its principal place of business also located in Nevada.

4.

Defendant St. Paul Fire & Marine Insurance Company is an insurance company domiciled in St. Paul, Minnesota, with its principal place of business located at 385 Washington Street, St. Paul, Minnesota 55102 St. Paul is registered to do business in the State of Louisiana and is doing so.

5.

Defendant The Travelers Companies, Inc. is a Minnesota corporation domiciled in St Paul, Minnesota, with its principal place of business located at 385 Washington Street, St. Paul, Minnesota 55102 Travelers is the parent company of numerous insurance companies that are registered to do business in Louisiana and issue policies of insurance in Louisiana and/or to Louisiana companies.

## THE INSURANCE POLICY

6

Defendants, using the brand names "Travelers" and "St Paul Fire & Marine Insurance Company" issued a "Motion Picture Production Package" insurance policy to Plaintiffs bearing Policy No. ENT1001593 ("the Policy"). The Policy covered various risks associated with the production of the motion picture titled, *The Expendables*. The Policy acknowledges that the filming location for *The Expendables* would be Rio De Janeiro, Brazil and New Orleans, Louisiana.

7.

Plaintiffs Alta Vista Productions, LLC and Alta Vista Productions, Inc are both identified as insureds under the Policy, which became effective on February 5, 2009 and continued until February 5, 2010.

8.

In Section 1A of the Policy with regard to "Pre-Production Cast Protection," Defendants agreed to pay for loss incurred by Alta Vista that resulted from, "any *described artist* who is prevented by their death, injury, or sickness from: commencing, continuing or completing their duties or performances during the *pre-production* period; or commencing *principal photography* (including the normal *pre-production* period)."

9.

The Policy defines *loss* in Section 1A as, "the amount by which the *production costs* actually and necessarily incurred during the *pre-production* period of the *covered production*

does, as a direct result of an event or series of events covered by this agreement, exceed those *production costs* that would have, but for the happening of such event(s), been incurred."

10.

In Section 1B of the Policy with regard to "Principal Photography Cast Protection," Defendants agreed to pay for loss incurred by Alta Vista that resulted from, "any *described artist* who is prevented by their death, injury, or sickness from: commencing, continuing or completing their duties or performances in a *covered production*."

11

The Policy defines *loss* in Section 1B as, "the amount by which the *production costs* actually and necessarily incurred in completing *principal photography* for the *covered production* does, as a direct result of an event or series of events covered by this agreement, exceed those *production costs* that would have, but for the happening of such event(s), been incurred."

## FACTS

12.

On or about the middle of January 2009, Alta Vista began pre-production activities for the motion picture, *The Expendables*. The first phase of actual production, which involved principal photography or filming, was scheduled to begin on March 30, 2009 in Rio De Janeiro, Brazil. The Brazilian production was supposed to last for three (3) weeks.

13.

By mid-January of 2009, preparation for *The Expendables* was also underway in New Orleans, Louisiana, where a greater portion of the motion picture would be filmed for seven (7) weeks, scheduled to commence on April 27, 2009 immediately following the Brazilian shoot.

14.

On or about March 5, 2009, one of the principal actors in the film, Jason Statham, underwent a medical examination by a physician selected by Defendants as part of Defendants' review and decision to issue "cast" and "essential element" coverage for Mr. Statham

15.

Mr. Statham passed this exam and on March 10, 2009, Defendants confirmed to Alta Vista that they were prepared to issue "cast" and "essential element" coverage for Mr. Statham.

16.

On or about March 16, 2009 – after Mr. Statham passed the above medical exam but before coverage was officially bound – Alta Vista became aware that Mr. Statham developed a growth on his vocal cord that might require further treatment and/or removal by his personal physician(s), and which would prevent him from being able to start filming in Brazil as planned on March 30, 2009.

17.

After receiving this information regarding Mr. Statham's medical condition, Defendants still bound cast coverage for Mr. Statham but refused to bind essential element coverage for Mr. Statham even though they had prior communicated otherwise on March 10, 2009.

18.

Based on the medical information available to it at the time, Alta Vista was forced to delay the start of the picture (hereafter referred to as "push") by one week from March 30th to April 6, 2009 in order to provide Mr. Statham with enough time to undergo surgery and recover from same.

19.

Mr. Statham had the growth on his vocal cord removed on or about March 24, 2009 and with his rest and recovery period, was medically cleared and able to travel to Brazil just in time to commence filming on the revised start date of April 6, 2009.

20.

On or about March 31, 2009, Alta Vista was made aware that Mr. Statham would have to return to Los Angeles, California at the conclusion of the Brazil shoot -- on or about April 27, 2009 -- for a follow-up appointment with two (2) of his treating physicians. Alta Vista was informed by at least three (3) of Mr. Statham's doctors that, after this appointment, the clear possibility existed that Mr. Statham would need another procedure at that time which would prohibit him from speaking for approximately fourteen (14) days, thereby preventing him from being able to resume filming in New Orleans on April 27th as planned.

21.

After receiving this medical information, Alta Vista was also informed by Mr. Statham's attorneys that Mr. Statham would not be able to perform in the motion picture at all unless Alta Vista delayed the resumption of filming in New Orleans by at least two (2) weeks due to Mr. Statham's medical condition and the opinions by three (3) of his doctors that the clear

possibility existed that he would need an additional treatment immediately following his April 27, 2009 doctor visit

22.

Based on the information it had received, Alta Vista was forced to declare a "hiatus" of the film for two weeks in between the Brazil and New Orleans, Louisiana shoots in order to provide Mr. Statham with the necessary rest and recovery time his doctors stated he would need should the additional medical procedure be performed

23

Due to the two-week hiatus necessitated by Mr. Statham's medical condition, the start date of filming in New Orleans was pushed until May 11, 2009  Filming was able to commence on May 11, 2009 in New Orleans with Mr. Statham's full participation

24.

On or about May 22, 2009, another actor in the film, Sylvester Stallone, suffered an ankle injury while filming *The Expendables* in New Orleans, Louisiana. As a result of same, Alta Vista incurred losses associated with the injury.

### JASON STATHAM CAST INSURANCE CLAIM

25.

As a result of the necessary initial one-week push of the film due to Mr. Statham's throat condition, Alta Vista incurred losses associated with rescheduling cast, crew, and various locations in Brazil and New Orleans according to the new dates resulting from the push. Although these losses were unfortunate, they pale in comparison to the tremendous financial

loss that would have been inevitable had Alta Vista kept its original start date of March 30, 2009, only to be forced to shut down with no advance warning to the cast, crew etc.

26.

As a result of the necessary two-week hiatus of the film in between the Brazil and New Orleans location shoots due to Mr. Statham's throat condition, Alta Vista incurred losses associated with rescheduling cast, crew, and locations in New Orleans, Louisiana according to the new dates resulting from the hiatus. Although these losses were unfortunate, they pale in comparison to the tremendous financial loss that would have been inevitable had Alta Vista planned to commence filming in New Orleans on April 27, 2009, only to be forced to shut down with no advance warning to the cast, crew etc

27.

In March of 2009, Alta Vista notified Defendants of Mr. Statham's medical condition and of its necessary and unavoidable decision to push the initial start of the production by one week and to declare a two-week hiatus between the Brazil and New Orleans shoots. From March 2009 going forward, Alta Vista kept Defendants informed of the losses it incurred as a result of Jason Statham's throat condition.

28.

By October of 2009, Alta Vista had provided Defendants with comprehensive and satisfactory proof of the costs, expenses, and other losses it incurred as a result of the initial one-week push and two-week hiatus totaling approximately $1,102,547.70 and $1,051,734.41, respectively.

29

Alta Vista subsequently supplemented its Jason Statham cast insurance claim with proof of an additional amount of approximately $177,872.47 in losses suffered as a result of Mr. Statham's medical condition.

30.

Defendants did not tender any payment to Alta Vista for the Jason Statham cast insurance claim until March 25, 2010 when they made a partial payment of $528,978.18 to Alta Vista. Defendants have failed to tender payment to Alta Vista for the remainder of its losses associated with the Statham cast insurance claim

31.

More than sixty (60) days have elapsed since Defendants' receipt of written proof of Alta Vista's losses, costs, and expenses associated with the Jason Statham cast insurance claim. In addition, the partial payment of $528,978.18 was made more than sixty (60) days from Defendants' receipt of written proof of Alta Vista's losses, costs, and expenses associated with this claim.

## STALLONE ANKLE CLAIM

32.

Immediately following the ankle injury of Sylvester Stallone on May 22, 2009, Alta Vista notified Defendants of this incident. From March 2009 going forward, Alta Vista kept Defendants informed of the losses it incurred as a result of Mr. Stallone's ankle injury.

33.

By October of 2009, Alta Vista had provided Defendants with comprehensive and satisfactory proof of the costs, expenses, and other losses it incurred as a result of the Sylvester Stallone ankle injury totaling approximately $306,146.11.

34.

Defendants did not tender any payment to Alta Vista for the Stallone ankle claim until March 31, 2010 when they made a partial payment of $139,439.82 to Alta Vista. Defendants have failed to tender payment to Alta Vista for the remainder of its losses associated with the Stallone ankle claim.

## **COUNT ONE: BREACH OF CONTRACT**

35.

Defendants have violated the terms of the Policy by:

(a) Delaying the initial payment and refusing to pay the remainder of Alta Vista's cast insurance claim for losses incurred by the initial one-week push of the start date and two-week hiatus of the production of *The Expendables* due to Mr. Statham's medical condition; and

(b) Delaying the initial payment and refusing to pay the remainder of Alta Vista's claim for losses arising out of Sylvester Stallone's ankle injury

36.

As a consequence of its breach of the Policy, Defendants are liable to Alta Vista for all damages, including all expenses and attorneys' fees in connection with bringing this lawsuit,

resulting from the breach of the Policy, as well as legal interest running from the date of judicial demand.

## COUNT TWO: VIOLATION OF LA R.S. 22:658 AND 22:1220

37.

Defendants' delay of its initial payments to Alta Vista for its claims arising out of Jason Statham's throat condition and Sylvester Stallone's ankle injury was in bad faith and was arbitrary, capricious and without probable cause. Defendants' actions also violated their duty of good faith and fair dealing to Alta Vista.

38.

Defendants' refusal to pay Alta Vista the remainder of its claims arising out of Jason Statham's throat condition and Sylvester Stallone's ankle injury is in bad faith and is arbitrary, capricious and without probable cause. Defendants' actions also violated their duty of good faith and fair dealing to Alta Vista.

39.

As a result of Defendants' conduct, Defendants are liable to Alta Vista for all amounts due under the Policy along with damages, attorneys' fees, and expenses in connection with bringing this lawsuit, as well as the penalties provided for in La. R.S. 22:658 and La. R.S. 1220, together with legal interest from the date of judicial demand.

## DEMAND FOR TRIAL BY JURY

40.

Alta Vista hereby demands a trial by jury on all issues triable of right by a jury pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

Plaintiffs Alta Vista Productions, LLC and Alta Vista Productions, Inc pray that this Court enter Judgment in their favor against Defendants St. Paul Fire & Marine Insurance Company and The Travelers Companies, Inc., as follows:

A. Holding Defendants liable under the Policy at issue and ordering Defendants to pay Alta Vista for all amounts due under the Policy and damages, including attorneys' fees and expenses on this lawsuit, running from the date of judicial demand, caused by Defendants' delay and refusal to pay Alta Vista's claims arising out of Jason Statham's throat condition and Sylvester Stallone's ankle injury, as set forth above;

B. Holding Defendants liable to Alta Vista for the penalties and costs provided for in La. R.S. 22:658 and 22:1220, and any other statutory penalties provided by law; and

C. Awarding to Alta Vista any other relief, in law or equity, to which it may be entitled.

**Respectfully Submitted:**

**PERCY, STROMBERG, BUSH & LANOUX**
712 North Burnside Avenue
Post Office Box 1096
Gonzales, Louisiana 70707
(225) 621-8522 Phone
(225) 647-6959 Fax
Email: rpercy@percylaw.com
Email: elanoux@percylaw.com
Email: tstromberg@percylaw.com

By: /s/ Robert Ryland Percy, III
**Robert Ryland Percy, III (La. #10418)
Erin Wiley Lanoux (La. #28651)
Katherine Tess Stromberg (La. #27853)**

*Attorneys for Alta Vista Productions, LLC and Alta Vista Productions, Inc.*